JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 On November 6, 2001, the State charged John Tice Hendricks with attempted deliberate homicide and aggravated assault. The District Court appointed Scott Spencer-who, in 1993, prosecuted Hendricks on a different charge while serving as Lincoln County Attomey-to serve as Hendricks’s counsel. Hendricks pled not guilty; a jury subsequently found him guilty of aggravated assault. On May 12, 2004, Hendricks filed a petition for postconviction relief. The District Court issued an order denying the petition. Hendricks appeals the court’s judgment.
¶2 We restate the issues as follows:
¶3 1. Is there per se ineffective assistance of counsel when appointed defense counsel previously prosecuted the defendant on another matter?
¶4 2. Is there per se ineffective assistance of counsel when appointed defense counsel works simultaneously as a city attorney and a county public defender in the same jurisdiction?
BACKGROUND
¶5 In the early morning hours of October 26,2001, Hendricks became involved in an altercation with Don Scott. During this altercation, Hendricks stabbed Scott with a kitchen knife. The knife entered Scott’s right side between his ribs and penetrated his liver and diaphragm, causing severe physical injuries.
¶6 The State charged Hendricks with the felony offenses of attempted deliberated homicide and aggravated assault. Amy Guth, Administrator of the Lincoln County Public Defender contract, moved the court to appoint Scott Spencer to represent Hendricks. At the time she made the appointment, Guth knew that Spencer had previously charged Hendricks with sale of dangerous drugs during his tenure as Lincoln County Attorney. See State ex rel. Fletcher v. District Court (1993), 260 Mont. 410, 859 P.2d 992. In that case, Hendricks, along with twenty-three other petitioners, moved to dismiss various drug cases and one burglary case. Fletcher, 260 Mont. at 412-13, 859 P.2d at 993. After the District Court denied their motion, the petitioners applied for a writ of supervisory control alleging outrageous government conduct. Fletcher, 260 Mont. at 412-13, 859 P.2d at 993. This Court ultimately dismissed the case and remanded it to the *49 District Court without prejudice. Fletcher, 260 Mont. at 419, 859 P.2d at 997.
¶7 During Spencer’s first meeting with Hendricks regarding the present case, Hendricks brought up the fact that Spencer had previously prosecuted him in the Fletcher case. According to Spencer, Hendricks “expressed concerns that because [Spencer] had prosecuted him that it would somehow carry over into [Spencer’s] defense of him in this case.” Spencer maintains, however, that by the time he finished explaining to Hendricks that the Fletcher case would have “no bearing” on his representation, Hendricks “didn’t seem to have a problem” with his proceeding as counsel. Hendricks, on the other hand, claims that from the beginning, he “was unwilling to have [Spencer] as an attorney” and requested that Spencer remove himself as defense counsel. During the evidentiary hearing, Hendricks testified that he objected to Spencer representing him for “a number of reasons,” including that Spencer “had sent [him] to prison and then filed charges when [he] was ready to get out of prison ... [he had] just been prejudiced by the man ... [and that they didn’t] have a good relationship just, you know, as people.” Hendricks further testified that he called Guth’s office to complain, but she informed him that it was Spencer’s duty to inform the court of the conflict.
¶8 Pursuant to Spencer’s representation, Hendricks pled not guilty. After a three-day trial, a jury found Hendricks guilty of aggravated assault, but not guilty of attempted deliberate homicide. Oh the same day the court sentenced Hendricks to twenty years in prison, Spencer moved to withdraw as Hendricks’s attorney because “the working relationship between counsel and client has deteriorated to the point that no viable working relationship exists between attorney and client.” The court appointed the Montana Appellate Defender Office to represent Hendricks for any appeal or postconviction relief.
¶9 Hendricks appealed his conviction, arguing that Spencer rendered ineffective assistance of counsel when he failed to raise a self-defense theory. This Court issued an opinion affirming Hendricks’s conviction and dismissing his appeal without prejudice, concluding that because Hendricks’s ineffective assistance of counsel claim could not be addressed without considering matters outside of the record, he could only raise this claim in a postconviction relief proceeding. State v. Hendricks, 2003 MT 223, ¶ 1, 317 Mont. 177, ¶ 1, 75 P.3d 1268, ¶ 1.
STANDARD OF REVIEW
¶10 This Court reviews a district court’s denial of postconviction relief *50 to determine whether the court’s findings of fact are clearly erroneous and whether its conclusions of law are correct. Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo. Thurston v. State, 2004 MT 142, ¶ 8, 321 Mont. 411, ¶ 8, 91 P.3d 1259, ¶ 8.
DISCUSSION
¶11 1. Is there per se ineffective assistance of counsel when appointed defense counsel previously prosecuted the defendant on another matter?
¶12 Hendricks asks this Court to adopt a rule that there is per se reversible conflict of interest when appointed defense counsel previously prosecuted the defendant on another matter. A review of our precedent, however, does not support this approach.
¶13 In State v. Deschon, 2002 MT 16, ¶ 18, 308 Mont. 175, ¶ 18, 40 P.3d 391, ¶ 18, we addressed the issue of ineffective assistance of counsel due to attorney conflict of interest-although on different factual grounds. In that case, Deschon argued that he received ineffective assistance of counsel because his attorney had a conflict of interest in representing him at the same time he represented one of Deschon’s key defense witnesses. Deschon, ¶ 15. In reaching the conclusion that Deschon did not receive ineffective assistance of counsel, we determined that “[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected counsel’s performance.” Deschon, ¶ 18. We emphasized that “[a]n actual conflict, as opposed to the mere possibility of a conflict, is necessary” and that “[s]uch conflict must be proved through a factual showing on the record.” Deschon, ¶ 18. After reviewing the record, we concluded that an actual conflict did not exist. Deschon, ¶ 19. We further noted that even if an actual conflict did exist, defense counsel’s performance was not adversely affected and, therefore, Deschon was not denied effective assistance of counsel. Deschon, ¶ 20.
¶14 In Thurston, we applied the same standard as set forth in Deschon. Thurston, ¶ 17. Thurston argued that his defense counsel had a conflict of interest because, during his previous tenure as Deputy Cascade County Attorney, he exchanged information about the investigation of Thurston’s case. Thurston, ¶ 16. Although we have not adopted the American Bar Association’s Standards for Criminal Justice, 4-3.5, Thurston cited to it, along with § 37-61-413, MCA, *51 arguing that defense counsel should not have represented him after supposedly gaining knowledge of his case through counsel’s former employment as a Deputy Cascade County Attorney. Thurston, ¶ 19.[1] We determined that even though Standard 4-3.5, and § 37-61-413, MCA, supported Thurston’s argument, there was no basis for reversal unless Thurston established that an “actual conflict” existed. Thurston, ¶ 20. Because we concluded that no evidence supported the notion that defense counsel’s representation of Thurston was influenced by the suggested conflict, we affirmed the District Court’s denial of Thurston’s conflict of interest claim. Thurston, ¶ 20.
¶15 In this case, Hendricks argues that Spencer had a conflict of interest because he prosecuted Hendricks several years earlier while serving as Lincoln County Attorney. More specifically, Hendricks contends that because he, along with the other Fletcher petitioners, filed a motion and brief alleging outrageous government conduct, Spencer likely remembered Hendricks and “harbored resentment” against him. Hendricks’s speculation regarding Spencer’s state-of-mind does not amount to a factual showing on the record that an “actual conflict” existed between counsel and the defendant. As we noted, “the mere possibility of a conflict” will not suffice; the “conflict must be proved through a factual showing on the record.” Deschon, ¶ 18. Despite Hendricks’s speculative allegations that Spencer “harbored resentment” against him, or that his representation was influenced by *52 his having previously prosecuted Hendricks, there is nothing in the record supporting the assertion that an actual conflict existed.
¶16 Even assuming arguendo that an actual conflict of interest did exist, Hendricks fails to establish that the conflict adversely affected Spencer’s performance resulting in ineffective assistance. In determining whether a defendant received ineffective assistance of counsel, we apply the Strickland test-that is, a defendant must first show that counsel’s performance was deficient, and second, that he was prejudiced by counsel’s deficient performance. State v. Henderson, 2004 MT 173, ¶ 5, ¶ 9, 322 Mont. 69, ¶ 5, ¶ 9, 93 P.3d 1231, ¶ 5, ¶ 9. See Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674. Hendricks argued to the District Court that Spencer provided ineffective assistance of counsel by: (1) failing to pursue the defense of justifiable use of force (self-defense); (2) not honoring Hendricks’s request to be present during Spencer’s witness interviews; and (3) failing to perform a courtroom demonstration the way that Hendricks wanted the demonstration conducted. Applying the second prong of the Strickland test, the District Court concluded that no prejudice resulted from Spencer’s performance as counsel because, in not pursuing a self-defense theory, “Spencer made a strategic decision based upon sound logic,” there was “no reason to believe that Hendricks’s presence during the interviews of any of the other witnesses would have helped his defense in any way,” and there was “no likelihood that Hendricks would have been acquitted if the [courtroom] demonstration had been performed to his liking.” Moreover, the court found that “[b]ased upon Hendricks’s demeanor and his response to questions, it seemed obvious ... that Hendricks was prepared to say whatever he had to say to obtain a new trial.” The court ultimately concluded that Spencer’s testimony was more credible than Hendricks’s. On appeal, we will not disturb a district court’s determination of witness credibility; this determination rests exclusively within the province of the finder of fact. State v. Boucher, 1999 MT 102, ¶ 19, 294 Mont. 296, ¶ 19, 980 P.2d 1058, ¶ 19.
¶17 We hold that Hendricks has not shown that an actual conflict of interest existed. Even assuming arguendo that there was an actual conflict of interest, he has not satisfied the second prong of the Strickland test; that is, he has not shown that Spencer’s representation was adversely affected or that Hendricks was prejudiced by the alleged conflict. Thus, Hendricks’s ineffective assistance of counsel claim has no merit.
¶18 2. Is there per se ineffective assistance of counsel when *53 appointed defense counsel works simultaneously as a city attorney and a county public defender in the same jurisdiction?
¶19 Hendricks also argues that Spencer had a conflict of interest because, while representing Hendricks in Lincoln County, Spencer simultaneously served as City Attorney in Libby-an overlapping jurisdiction. Arguing that “it is impossible to speculate how the subtle and subconscious affect of the dual representation impacted Spencer,” Hendricks contends that this Court should conclude there was structural error in Spencer’s serving as city attorney and as his defense counsel. Accordingly, Hendricks asks this Court to adopt a per se rule that a city attorney is disqualified from representing an indigent criminal defendant in a county of overlapping jurisdiction. We decline to adopt such a rule. Instead, we apply the same standard set forth in Issue 1-that is, “[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected counsel's performance.” See ¶ 13. Similar to Issue 1, we hold that there is nothing in the record supporting a conclusion that Spencer’s work as a city attorney in the same jurisdiction in which he defended Hendricks resulted in an actual conflict that adversely affected his representation of Hendricks.
¶20 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES COTTER and RICE concur.

 The American Bar Association’s Standards for Criminal Justice Standard 4-3.5 states:
(f) Defense counsel should not defend a criminal case in which counsel’s partner or professional associate is or has been the prosecutor in the same case.
(g) Defense counsel should not represent a criminal defendant in a jurisdiction in which he or she is also a prosecutor.
(h) Defense counsel who formerly participated personally and substantially in the prosecution of a defendant should not thereafter represent any person in the same or a substantially related matter. Defense counsel who was formerly a prosecutor should not use confidential information about a person acquired when defense counsel was a prosecutor in the representation of a client whose interests are adverse to that person in a matter.
ABA Standards on Criminal Justice, Standard 4-3.5(f)-(h), Conflicts of Interest (1993). Section 37-61-413, MCA, states:
Former public prosecutors not to defend. An attorney and counselor who has brought, carried on, aided, advocated, or prosecuted or has been in anywise connected with an action or special proceeding, civil or criminal, as attorney general, county attorney, or other public prosecutor, must not, at any time thereafter, directly or indirectly advise concerning, aid, or take any part in the defense thereof; or take or receive, either directly or indirectly, from a defendant therein or other person a fee, gratuity, or reward for or upon any cause, consideration, pretense, understanding or agreement, either express or implied, having relation thereto or to the prosecution or defense thereof.